UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 14 CR 50005 |
| vs. | ) | |
| | ) | Judge Frederick J. Kapala |
| CHARLES DEHAAN | ) | |

**UNITED STATES' RESPONSE TO DEFENDANT'S
OBJECTIONS TO THE PRESENTENCE INVESTIATION REPORT**

The UNITED STATES OF AMERICA, by ZACHARY T. FARDON, United States Attorney for the Northern District of Illinois, respectfully submits the following response to defendant's objections to the presentence investigation report:[1]

**A. The PSR Correctly Applied an Enhancement for Ten or More Victims**

Defendant argues that there is only one victim of defendant's crimes—Medicare. Defendant is incorrect. Application Note 4(E) provides, "[f]or purposes of subsection (b)(2), in a case involving means of identification 'victim' means (i) any victim as identified in Application Note 1; or (ii) any individual whose means of identification was used unlawfully or without authority." U.S.S.G. § 2B1.1, comment. (n.4(E)). A "means of identification" is a name or number to identify an actual specific individual such as a social security number. *See* 18 U.S.C. § 1028(d)(7); U.S.S.G. § 2B1.1, comment., (n.1).

In this case, defendant used unlawfully patients' means of identification. Specifically, defendant submitted claims to Medicare using a patient's HIC number, or Medicare identification

---

[1] In addition to the enhancements identified in this response, defendant also objects to any enhancements based on loss, including an enhancement under § 2B1.1(b)(7). The government plans to present evidence of loss, in addition to the loss amounts identified in this response, at defendant's sentencing hearing on September 21, 2016. It is the government's position that loss is at least $1,500,000.

1

number (social security number with a letter at the end), for, among other things, visits that did not occur. *See United States v. Roy*, 819 F.3d 998, 1002 (7th Cir. 2016)(finding that 168 patients billed during defendant's Medicare fraud scheme were victims because their Medicare numbers were used and Medicare numbers are a means of identification).

Defendant argues that even if there are more victims than Medicare, the number of victims does not exceed ten. Defendant is again incorrect. In December 2013, defendant unlawfully used patient SJ's HIC number to submit a $346.00 claim to Medicare for an in-home visit that did not occur. The government has identified additional examples, including the seven below, where defendant unlawfully used a patient's HIC number to submit a claim to Medicare for a visit that did not occur. The examples include:

1. Patient J.B. (billed $657.00)
2. Patient D.D. (billed $366.62)
3. Patient M.M. (billed $451.76)
4. Patient D.P. (billed $261.94)
5. Patient L.S. (billed $346.56)
6. Patient J.T. (billed $567.00)
7. Patient E.Z. (billed $683.76)

Additionally, defendant unlawfully used the HIC number of deceased patients to submit claims to Medicare for visits that occurred after the patient died. For example, on June 21, 2013 and July 17, 2013, defendant used patient CH's HIC number to submit two claims to Medicare totaling more than $480 after patient CH died. In addition to patient CH, defendant also unlawfully used the HIC number of the patients identified below to submit claims to Medicare for visits that occurred after the date of death:

1. Patient C.A. (billed $189.00)
2. patient C.B. (billed $189.00)
3. Patient A.B. (billed $378.00)
4. Patient M.B. (billed $241.42)

      5.      Patient I.G. (billed $189.00)
      6.      Patient M.J. (billed $243.00)
      7.      Patient C.J. (billed $378.00)
      8.      Patient Ch.J. (billed $189.00)
      9.      Patient C.P. (billed $416.18)
      10.    Patient J.T. (billed $189.00)
      11.    Patient N.V. (billed $241.00)
      12.    Patient N.W. (billed $189.00)

Defendant argues that "patients who were deceased at the time of the supposed visit for which Medicare was billed should not be considered victims due to being deceased at the time." Def.'s Obj. to the PSR at 2. Defendant, however, has not cited any authority in support of his assertion. On the contrary, the Guidelines define a "means of identification" as "an actual (*i.e.* not fictitious) individual, . . . ." U.S.S.G. § 2B1.1, comment., (n.1). The fact that a patient was deceased at the time defendant unlawfully used the patient's HIC number is of no consequence as the deceased patient is an actual individual whose identification was unlawfully used by defendant.

Even if the deceased patients are not considered victims, defendant also unlawfully used the HIC number of patients to submit claims to Medicare at the highest payment levels for routine, non-complex visits with new and established patients even though the visit did not qualify for the highest levels of payment. For example, patient L.B. told law enforcement agents that defendant visited one to two times per month, stayed 10-15 minutes and asked about L.B.'s pain, took L.B.'s blood pressure and listened to L.B.'s heart. Yet, defendant submitted claims to Medicare for patient L.B. using CPT codes 99349 (typically a 40 minute visit requiring a detailed examination and medical decision making of moderate complexity) or 99350 (typically a 60 minute visit requiring a comprehensive examination and medical decision making of moderate to high

3

severity). Similarly, patient P.B. told law enforcement agents that defendant's visits typically lasted five minutes and involved no examination. Like patient L.B., defendant submitted claims to Medicare for patient P.B. using CPT codes 99349 or 99350. The government plans to present at sentencing evidence of the following patients:

| Patient | Told Law Enforcement | CPT Codes |
|---|---|---|
| S.C. | Treated S.C. and S.C.'s girlfriend. Defendant visited every month; stayed 20 minutes total, and never performed an examination; only asked if anything was wrong. | Only 99344 ($376.50), 99349 ($1,206.26) and 99350 ($1,099.86) for S.C. and 99345 ($416.18), 99349 ($964.84), and 99350 ($1,311.86) for S.C.'s girlfriend |
| W.F. | Defendant's visits lasted 10-20 minutes, never performed an examination, spoke about non-medical things, provided prescriptions | Only 99345 ($1,655.00) and 99349 ($756.00) |
| D.G. | Defendant's visits typically 5 minutes and never more than 20 minutes. Usually just checked D.G.'s vitals | Only 99345 ($1,249.00), 99349 ($8,630.84) and 99350 ($4,531.74) |
| D.G. | Defendant never examined D.G. Defendant treated D.G.'s girlfriend | Only 99344 ($346.00) and 99349 ($241.00) |
| L.G. | Defendant's visits last 5 minutes. No medical examination. | Only 99344 ($346.00) and 99349 ($241.00) |
| G.H. | Defendant's visits last 5 minutes. No medical examination. | Only 99345 ($428.49), 99349 ($1,962.68) and 99350 ($1,980.02) |
| S.L. | Defendant has never examined S.L. and never been in S.L.'s apartment | Only 99349 ($4,661.10) and 99350 ($2,143.20) |
| J.R. and K.R. | Defendant has never physically examined J.R. or K.R. Defendant's first visit lasted 10-15 minutes and defendant spoke to J.R and | J.R.: Only 99345 ($416.00) and 99349 ($241.00)<br><br>K.R.: Only 99345 ($416.00) and 99349 ($241.00) |

| | | |
|---|---|---|
| | K.R. Second visit, defendant didn't come in J.R. and K.R.'s apartment. | |
| M.T. | Defendant's visits lasted 5 minutes. Non-medical conversations. | Only 99344 ($300.00), 99349 ($1,101.84) and 99350 ($674.20) |
| D.W. | Defendant visited once per month, usually stayed 15-20 minutes, occasionally took blood pressure and listened to D.W.'s heart but usually watched TV with D.W. and refilled prescriptions. | Only 99344 ($676.50), 99349 ($1,532.26) and 99350 ($1,157.18) |

In some cases, defendant unlawfully used the HIC number of patients to submit claims to Medicare at the highest payment levels for visits with new and established patients even though the visit did not qualify for the highest levels of payment but instead involved defendant making inappropriate sexual contact with the patient. The government plans to present at sentencing evidence of the following patients:

| Patient | Told Law Enforcement | CPT Codes |
|---|---|---|
| G.G. | During visits, defendant expressed a desire to be with G.G. Defendant performed oral sex on G.G. and G.G. performed oral sex on defendant. No medical examination. Defendant wore surgical scrubs and no underwear. | Only 99345 ($451.76), 99349 ($2,026.56), and 99350 ($4,935.46) |
| C.J. | Defendant visited once per month and took C.J.'s temperature and checked C.J.'s heart beat and breathing. During third visit, defendant attempted to grab C.J.'s breast. During | Only 99345 ($406.00), 99349 ($1,510.08), and 99350 ($5,381.42) |

5

| | | |
|---|---|---|
| | next visit, defendant made a sexually explicit comment to C.J. | |
| G.J. | Defendant visited twice per month. Each visit, usually unscheduled, lasted 5 to 15 minutes. Defendant took G.J.'s vitals. Defendant also touched G.J.'s breast and asked G.J. if G.J had a boyfriend. Defendant wore medical scrubs and no underwear. | Only 99349 ($1,249.00), 99349 ($7,499.68), and 99350 ($8,071.88) |
| M.H. | M.H. and defendant were involved in a sexual relationship. No medical examinations. Defendant wrote M.H. prescriptions. | Only 99349 ($482.84) and 99350 ($551.38) |
| M.K. | Defendant visited once per month and visits lasted 10-20 minutes. Defendant performed a breast examination using his mouth. | Only 99345 ($254.23), 99349 ($13,393.83), and 99350 ($19,043.78) |
| S.L. | S.L. requested a scooter. While measuring S.L., defendant touched S.L.'s leg and breast. Next visit, defendant wore medical scrubs and no underwear. Removed his penis. No medical examination. | Only 99345 ($411.09), 99349 ($378.00), and 99350 ($301.00) |
| B.M. | Defendant never performed a medical examination. Visits lasted 5 minutes. During one visit, defendant commented on B.M.'s attractiveness. | Only 99345 ($406.00) and 99349 ($1,286.42) |
| J.S. | Defendant J.S.'s physician since 2000. Starting in 2009, defendant never performed a medical examination and instead engaged in sexual acts with J.S. | Only 99349 (3,097.32) and 99350 ($10,296.94) |

6

| | | |
|---|---|---|
| L.S. | Defendant never performed a medical examination. Defendant engaged in sexual acts with L.S. | Only 99349 ($5,930.29) and 99350 ($1,8954.94) |
| Y.V. | Visits were very short; defendant took Y.V.'s vitals. During last two visits, defendant touched himself and rubbed himself against Y.V.'s legs. Defendant wore medical scrubs and no underwear. | Only 99345 ($451.76), 99350 ($1,466.48) |

### B. The PSR Correctly Applied an Enhancement for Vulnerable Victims

Defendant argues that "the victim in the case, as pled to by Defendant, is the United States by way of the Medicare program. The United States cannot be considered a 'vulnerable victim.'" Def.'s Obj. to the PSR at 2. Defendant is mistaken because, as stated above, defendant's victims are those whose means of identification defendant unlawfully used to submit claims to Medicare. *See* U.S.S.G. § 2B1.1, comment., (n.4(E)).

Defendant also argues that even if some of the patients are considered victims, they are not necessarily vulnerable victims. Def.'s Obj. to the PSR at 2. A vulnerable victim means "a person (A) who is a victim of the offense of conviction and any conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct), and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1, comment. (n.2). "The government needs only establish that a single victim was vulnerable in order for the enhancement to apply." *United States v. Sims*, 329 F.3d 937, 944 (7th Cir. 2003).

7

Defendant's patients were generally older and physically and mentally handicapped. *See United States v. Parolin*, 239 F.3d 922, 926 (7th Cir. 2001)(stating that no other factor need accompany age so long as the victim's vulnerability is related to the victim's age); *United States v. Sriram*, 12 CR 67, 2003 WL 22532800, at * 10 (N.D. Ill. Oct. 2, 2003)(finding that elderly patients that were the subjects of false paperwork were vulnerable victims even though the insurance company suffered a financial loss). Defendant took advantage of his patients by billing these vulnerable older and physically and mentally handicapped patients for visits that did not occur. The government will prove at defendant's sentencing that defendant also took advantage of his patients' vulnerabilities by performing perfunctory visits that were not complex and lasted 5-10 minutes and, in some instances, made sexual contact or attempted to make sexual contact with generally older and physically and mentally handicapped female patients.

Defendant also argues that whether or not defendant's patients are victims, "the patients did not suffer a financial loss as a result beyond that of an ordinary taxpayer." Def.'s Obj. to the PSR at 2. Defendant's argument is incorrect in two ways. First, "[t]here is no requirement in section 3A1.1 that a target of defendant's criminal activities must suffer financial loss." *United States v. Stewart*, 33 F.3d 764, 770 (7th Cir. 1994). Second, defendant fails to recognize that not every patient had 100% Medicare coverage. Many patients were required to pay out-of-pocket copays for unlawfully billed visits.

**C.     The PSR Correctly Applied an Enhancement for A Large Number of Vulnerable Victims**

Defendant argues, *inter alia*, that there were not a large number of vulnerable victims and that, assuming the government can identify ten vulnerable victims, ten is not a large number.

8

Def.'s Obj. to the PSR at 3. Defendant is incorrect because there are a large number of vulnerable victims and although the government believes there are more than ten, ten is a large number.

The Guidelines do not define what constitutes a large number. *United States v. Anderson*, 349 F.3d 568, 573 (8th Cir. 2003). The Tenth Circuit has looked to the commentary in U.S.S.G. § 2H4.1 to find that ten is a large number. *United States v. Kaufman*, 546 F.3d 1242, 1268-69 (10th Cir. 2008)(stating that the "commentary suggests that in the context of involuntary servitude and forced labor, ten victims is a large number. We see no reason not to apply that same standard to the 'large number' inquiry under U.S.S.G. § 3A1.1(b)(2)"); *but see United States v. Mooty*, 25 Fed. App'x 501, 501 (8th Cir. 2002)(unpublished)(holding that seven is not, as a matter of law, a large number within the meaning of § 3A1.1(b)(2)).

Here, defendant's practice focused on individuals who needed in-home visits due to age or mental/physical limitation. As identified above, the government has identified at least thirteen patients whose information defendant used to submit claims to Medicare at the highest payment levels for routine, non-complex visits that did not qualify for the highest levels of payment. These patients are elderly or suffer from mental/physical limitations or both. The government has also identified at least ten female patients whose information defendant used to submit claims to Medicare for alleged in-home visits when, in fact, defendant provided no medical services and instead made sexual contact, or attempted sexual contact, with the patients.[2] These women are vulnerable victims because many are elderly and suffer from physical and mental limitations.

---

2 The government is not arguing that the deceased patients should be considered vulnerable victims. *See United States v. Seward*, 272 F.3d 831, 840 (7th Cir. 2001)("We cannot accept the idea that the Guidelines go so far as to recognize the deceased for purposes of the vulnerable victim enhancement.").

For the foregoing reasons, the government respectfully requests that this Court apply the enhancements identified in the PSR.

Respectfully submitted,

ZACHARY T. FARDON
United States Attorney

By: /s/ *Scott R. Paccagnini*
SCOTT R. PACCAGNINI
Assistant United States Attorney
327 South Church Street - Room 3300
Rockford, Illinois 61101
(815) 987-4444

10

## CERTIFICATE OF FILING AND SERVICE

The undersigned Assistant United States Attorney hereby certifies that the following document:

**UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT**

was served on September 20, 2016, in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

/s/ *Scott R. Paccagnini*
SCOTT R. PACCAGNINI
Assistant United States Attorney
327 South Church Street - Ste. 3300
Rockford, Illinois 61101
(815) 987-4444