UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 14 CR 50005 |
| vs. | ) | |
| | ) | Judge Frederick J. Kapala |
| CHARLES DEHAAN | ) | |

**UNITED STATES' MOTION FOR AN ABOVE-GUIDELINES RANGE SENTENCE**

The UNITED STATES OF AMERICA, by JOEL R. LEVIN, Acting United States Attorney for the Northern District of Illinois, respectfully submits the following in support of an above-Guidelines range sentence of 130 months' imprisonment:

In imposing a sentence, a district court is expected to "(1) calculate the applicable Guidelines range; (2) give the defendant an opportunity to identify any of the 18 U.S.C. § 3553(a) factors that might warrant a non-Guidelines sentence; and (3) state which factors influenced the final sentence." *United States v. Gill*, 824 F.3d 653, 664 (7th Cir. 2016)(internal marks omitted). Above-Guidelines sentences will be upheld "as long as the district court gives an adequate explanation that is consistent with the factors in § 3553(a)." *United States v. Smart*, 603 F. App'x 500, 502 (7th Cir. 2015). A sentence above the advisory range is more likely to be reasonable if it is based on factors sufficiently particularized to the individual circumstances of the case rather than factors common to offenders with like crimes. *United States v. Aljabari*, 626 F.3d 940, 952 (7th Cir. 2010). The Seventh Circuit has upheld above-Guidelines sentences where the enhancements did not fully capture the harm, *United States v. Carbajal*, 662 F. App.'x 468, 472 (7th Cir. 2016), or where the judge considered the advisory range too lenient. *United States v. Perez-Molina*, 627 F.3d 1049, 1051 (7th Cir. 2010).

1

Here, this Court has determined the applicable Guidelines range is 97-121 months' imprisonment. This Court's determination consists of an offense level that includes the base offense level, an increase for the loss amount, an increase for the number of victims and the large number of vulnerable victims, an increase for loss to a government health care program, an increase for abuse of a position of trust, and a decrease for acceptance of responsibility. This Court's calculated Guidelines range, however, does not take into account defendant's sexual contact with his patients.[1]

Title 18, United States Code, Section 2246(3) defines "sexual contact" as "the intentional touching, either directly or through clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." *Id.* Guideline § 2G1.3(b)(4) provides: "If the offense involved the commission of a sex act or sexual contact . . . increase by 2 levels." U.S.S.G. § 2G1.3(b)(4).[2] Defendant's scheme to defraud Medicare includes instances, as described below, where defendant billed Medicare for a patient visit even though defendant provided minimal or no medical services but instead made sexual contact with the patient. Because the Guidelines do not take into account

---

[1] The government recognizes that defendant has been charged with criminal offenses in Cook County and Winnebago County based on defendant's inappropriate sexual contact with many of his patients. This Court may nevertheless consider in aggravation defendant's inappropriate sexual contact with his patients. *United States v. Watts*, 519 U.S. 148, 156 (1997). In *Watts*, the Supreme Court held that conduct for which an individual was charged but acquitted may be considered at sentencing. 519 U.S. at 157. "It would therefore be a strange anomaly if a judge could consider additional criminal activity in every instance except when the government had decided to bring separate charges and those charges remain pending." *United States v. Conley*, 541 Fed. Appx. 699, 702 (7th Cir. 2013)(affirming the district court's consideration at sentencing of defendant's pending escape charge).

[2] The government recognizes that U.S.S.G. § 2G1.3 is not one of the sections of the Guidelines referenced in the Statutory Index for a violation of 18 U.S.C. § 1347. The government cites § 2G1.3 as an example where additional points are added to an offense level where the offense included sexual contact. The government also notes that while §§ 2G1.3(b)(1)(2) and (3) contain specific offense characteristics involving minors, § 2G1.3(b)(4) does not.

defendant's sexual contact with his patients, this Court should increase defendant's base offense level by 2-points using § 2G1.3(b)(4) as a reference and sentence defendant to 130 months' imprisonment.[3]

Sue Lapin testified defendant visited her apartment. S. Tr. 24-29. During the visits defendant never provided any medical services other than to fit her for a wheelchair and check her blood pressure. *Id*. Instead, defendant touched Ms. Lapin's breasts and told her he did so to make sure her breasts would fit in her wheelchair. *Id*. at 25. Defendant also became aroused during one visit and exposed himself during another visit. *Id*. at 24-29. Defendant submitted claims to Medicare totaling $1704.52 for visits with Ms. Lapin even though defendant provided Ms. Lapin minimal to no medical services and instead inappropriately touched her. Linda Schultz testified that defendant "played with me every time he come visit." S. Tr. 57. Ms. Schultz said she touched defendant's penis during every visit and that defendant "didn't much medical exam me. All he did is he come there, and he was always—he would always pull his pants down and pull it out. He had me playing with it, . . . ." *Id*. Defendant submitted claims to Medicare totaling $48,067.14 even though defendant provided Ms. Schultz no medical services and instead inappropriately touched her.

Similarly, Joan Ann Shortridge said under oath that after her hip surgery defendant provided no medical services and instead inappropriately touched her. Ex. 34F. Ms. Shortridge said defendant acted in a sexual manner during every visit from February 2009 through 2012. *Id*. Defendant exposed himself and attempted to have Ms. Shortridge touch him. *Id*. Defendant

---

3 Adding two points to defendant's offense level would produce a Guidelines range of 121-151 months' imprisonment. The government's recommendation of 130 months' imprisonment falls within the lower part of this range.

3

also masturbated in front of Ms. Shortridge. During one visit, Ms. Shortridge noticed a scar near defendant's genitals that Ms. Shortridge described on the lower right-side of his abdomen with very little pubic hair. *Id*. Detective DePastors corroborated the location of defendant's scar and testified that defendant's scar was two inches below his navel below his beltline. S. Tr. 192. While Ms. Shortridge said the scar was about an inch and Detective DePastors described it as long, the location of the scar is what is important as Ms. Shortridge accurately described the location of defendant's scar relative to his genitals. Since 2009, Defendant submitted claims to Medicare totaling $20,663.51 even though defendant provided Ms. Shortridge no medical services and instead inappropriately touched her.

Gertrude Glaspie said that during every visit defendant reached under shirt while massaging her back and fondled her breast. S. Tr. 363. Ms. Glaspie also said she performed oral sex on defendant and he performed oral sex on her. *Id*. at 363-364. Defendant billed Medicare $10,962.38 for visits with Ms. Glaspie. *Id*. at 366; Ex. 81C. Marcie Holliman said she had sex with defendant in exchange for prescriptions for certain medications. S. Tr. 198-199. Defendant billed Medicare $2,442.48 for visits with Ms. Holliman. *Id*. at 371; Ex. 81C.[4] Machelle Kiolbassa said defendant visited once per month and stayed approximately 10 to 20 minutes. S. Tr. 372. During one visit, after Ms. Kiolbassa complained about pain in her breast, defendant told her to pull up her shirt and her bra and defendant placed his mouth on her breasts and nipples. *Id*. at 372-373. Defendant billed Medicare $60,777.74 for visits with Ms.

---

4 Interestingly, with regard to Ms. Holliman, defendant told Investigator Jones that he quit prescribing Ms. Holliman medications once he found out that she was a drug seeker, (S. Tr. 207), but subsequently told Agent Woodill that he kicked Ms. Holliman out of his practice because she was stealing money from her mom and threatened to tell people they had sex if defendant did not prescribe Ms. Holliman medication. S. Tr. 226.

Kiolbassa. *Id*. at 375; Ex. 81C. Yvonne Vazquez said during defendant's third visit to her home defendant placed his hand inside his scrub pants and appeared to fondle himself after asking Ms. Vazquez to lift her shirt. S. Tr. 383. During the final visit, defendant sat down on the edge of Ms. Vazquez's bed with his legs spread and placed his hands in his pants. *Id*. Defendant billed Medicare $2,534.46 for visits with Ms. Vazquez. *Id*. at 385; Ex. 81C. Starlene Petrus said defendant rubbed her leg and then her breast. S. Tr. 345. Ms. Petrus also noticed when defendant stood up he had an erection. *Id*. Defendant billed Medicare $14,926 for visits with Ms. Petrus. Ex. 81C.

The government's evidence, which defendant has not contradicted, proves by a preponderance of the evidence that defendant billed Medicare for some patient visits where defendant provided minimal or no medical services but instead made sexual contact with the patient. Defendant's conduct warrants an above-Guidelines sentence as the factors supporting such a sentence (*i.e*. nature and circumstances of the offense and the need for the sentence imposed to reflect the seriousness of the offense, provide just punishment for the offense and afford adequate deterrence to the criminal conduct) are sufficiently particularized to the individual circumstances of defendant's case rather than factors common to other Medicare fraud offenders.

While some may consider Medicare fraud to be less serious than other offenses, defendant used his status as a home health doctor to take advantage of some of his female patients. The public, particularly elderly and ill female home health patients, must be protected from someone like defendant who would make sexual contact with his home health patients. Unlike an office visit where the patient comes to the doctor's office, a home health visit requires that the doctor visit the patient in her home, providing no escape from a doctor who, like defendant, is willing to

5

take advantage of the patient. Even after defendant left, these women had to remain in the very place where defendant took advantage of them. For patients like Ms. Shortridge who is bedbound, she remained in the very bed she was in when defendant sexually assaulted her. No patient, male or female, should have to deal with such conduct from his or her physician. It is unquestionable that there is a definite need to deter health care providers from preying on elderly and ill female home health patients.

With regard to restitution, this Court should order defendant repay $2,787,054.58. The $2,787,054.58 number reflects the loss to Medicare based on defendant's fraudulent certifications. With regard to a fine, the Guidelines recommend a minimum fine of $30,000 and a maximum fine of $300,000 for an offense level of 30. The government recommends that this Court impose a fine within the advisory range.

For the foregoing reasons, this Court should grant the government's motion for an above-Guidelines range sentence and sentence defendant to 130 months of imprisonment. This Court should also order that defendant pay $2,787,054.58 in restitution and a fine within the advisory range.

    Respectfully submitted,

    JOEL R. LEVIN
    Acting United States Attorney

By:   /s/ *Scott R. Paccagnini*
    SCOTT R. PACCAGNINI
    Assistant United States Attorney
    327 South Church Street - Room 3300
    Rockford, Illinois 61101
    (815) 987-4444

## CERTIFICATE OF FILING AND SERVICE

The undersigned Assistant United States Attorney hereby certifies that the following document:

**UNITED STATES' MOTION FOR AN ABOVE-GUIDELINES RANGE SENTENCE**

was served on April 14, 2017, in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

/s/ *Scott R. Paccagnini*
SCOTT R. PACCAGNINI
Assistant United States Attorney
327 South Church Street - Ste. 3300
Rockford, Illinois 61101
(815) 987-4444