IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 14-CR-50005 |
| | ) | |
| | ) | |
| CHARLES S. DEHAAN, | ) | Judge Frederick J. Kapala |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO UNITED STATES' MOTION FOR
AN ABOVE-GUIDELINES RANGE SENTENCE**

NOW COMES the Defendant, CHARLES S. DEHAAN, by and through his attorney, DEBRA D. SCHAFER, of Sreenan & Cain, P.C. and in support of his sentencing memorandum, states as follows:

On May 20, 2016, Defendant pleaded guilty, pursuant to written plea agreement, to Counts Nine and Twenty-One of the superseding indictment. Both offenses allege Health Care Fraud pursuant to 18 U.S.C. §1347. Defendant admitted to knowingly and willfully billing Medicare for a visit with a patient he had not seen or treated on December 12, 2013 (Patient SJ – Count Nine) and for a visit with a patient after the date of her death (Patient CH - Count Twenty-One).

Following a hearing and briefs on the subject of loss, the Court determined that, based on its loss calculation, the guideline calculation is 97-121 months. The Court is now tasked with the responsibility of considering the factors pursuant to 18 USC § 3553.

1

In its motion for an above-guidelines range sentence, the Government is asking the Court to increase the defendant's sentence based upon the allegations of sexual contact with his patients. In support of its position, the Government specifically cites U.S.S.G. § 2G1.3(b)(4) because there is no mention of minors as with § 2G1.3(b)(1), (2) and (3). What that argument ignores is the fact that U.S.S.G. § 2G1.3 as a whole is limited to acts with minors, *i.e.* Promoting a Commercial Sex Act or Prohibited Sexual Conduct w*ith a Minor*; Transportation o*f Minors* to Engage in a Commercial Sex Act or Prohibited Sexual Conduct; Travel To Engage In Commercial Sex Act or Prohibited Sexual Conduct *with a Minor*; Sex Trafficking o*f Children*; Use of Interstate Facilities to Transport Information a*bout a Minor*. (Emphasis added).

In his brief regarding the loss calculation, the defendant urged the court not to consider the allegations of sexual misconduct and does so again at this stage in the proceeding. Defendant did not plead guilty to an offense involving sexual misconduct. Because of the pending charges of sexual misconduct involving Sue Lapin, Linda Schultz, Starlene Petrus and Joan Shortridge, the defendant is not in a position to be able to respond to those allegations. Those cases will be fully litigated in another court where Defendant has the full opportunity to be heard and urges the Court to leave any sentencing decision on those issue to that court in the event Defendant were convicted of such an offense.

Defendant would also remind the Court of the incredible nature of the testimony of Sue Lapin, Linda Schultz and Joan Shortridge and reiterates his arguments concerning these women as set forth in his brief concerning loss: Sue Lapin repeatedly changed her story about the details of what she claims happened to her. Linda Schultz would have the Court believe that she was sexually abused from the first visit from Defendant and that it continued every time he would

come to her home for the next several years. S. Tr. 60, 57. She alleges she told her sister-in-law who advised her to ignore it. She had access to family, a landlord who was a nurse, to a weekly home health nurse and a DORS caretaker. S. Tr. 68. She had no difficulty calling Defendant's office when she had an issue but did not call the police until she saw a story about Defendant on the news. She does not allege she kept quiet because she was enamored of Defendant ("He kept on talking like he tried to get me to take up with him, but I didn't go for it." S. Tr. 57), so it is simply incredible to believe that an adult would put up with the behavior as alleged without complaint for the length of time alleged. She was willing to complain to her landlord, Bonnie, about her low oxygen, but she would not tell her about being serially sexually abused for four years until she heard stories on the news first. S. Tr. 62, 69. Ms. Schultz also acknowledged her DORS caregiver being present "most of the time" Defendant would visit. S. Tr. 77.

  Defendant would note the following concerning the testimony of Ms. Shortridge: During the time of the alleged abuse, Ms. Shortridge lived with her brother and cousin and had a boyfriend. Ex. 34F at 6 and 11. Ms. Shortridge claims she was sexually abused by Defendant for more than two years while her boyfriend or brother and/or cousin were just outside the door without ever making a sound to draw their attention. Ex. 34F at 33-34. She was not isolated by her mental and physical limitations such that she was not in a position to make a complaint to someone (i.e. family, friend, nurse or police). She was tended to by at least one physical therapist and nurse. Ex. 34A and Ex. 34F 57. When meeting with Detective Jennifer DePastores of the Des Plaines Police Department who spoke to Ms. Shortridge "maybe three times", she did not mention or provide them with a copy of the calendar on which she claims she made notes. S. Tr. 194, Ex. 34B-E.

Ms. Shortridge obviously did not make entries into the calendars contemporaneously with an event as evidenced by the entry for her 2009 surgery in 2010. Ex. 34F. Presumably, Ms. Shortridge did keep track of Defendant's visits like she did many other events. However, in reviewing even copies of those calendars, every "sicko" comment and frown/cry face she made could easily have been added after her complaint to the police. In fact, it is apparent from the handwriting that certain entries were made with different pens (e.g. Ex. 33B: June 10th entry; Ex. 34C. March upper right corner, July 6th, August 3rd and August 24th entries). Ms. Shortridge frequently put stars by Defendant's name (e.g. Ex. 34B May 4th, May 25th, June 10th, July 29th, September 16th entries; Ex. 34C: April 7th, July 6th, August 3rd, September 28th entries; Ex. 34D: January 17th entry) and it is not hard to imagine that the words crossed out near Defendant's name (Ex. 34C: February 11th, March upper left corner, May upper left corner; Ex. 34E: March 1st) were something positive about Defendant she could not explain. The best example is the entry for November 18, 2010, in which she identified Defendant as "Best Dr." Ex. 34B. She tried to explain that while she used to believe he was her best doctor, she wrote that entry that day feeling "hurt and angry" because of his alleged abuse. Ex. 34A and Ex. 34F 68-70. Ms. Shortridge did not tell anyone about the alleged abuse until after she read an article about Defendant being arrested for sexual assault to someone else. Ex. 34A and Ex. 34F 47.

Ms. Shortridge is a woman with significant mental health issues. If those "sicko" comments and sad face drawings were actually contemporaneous with abuse, Defendant submits that Ms. Shortridge would simply have written "Sicko came" and would not have starred his name so many times like she sometimes did with birthdays and Valentine's Day. Ex. 34B August 5th; Ex. 34C February 14th.

4

With respect to the other, uncharged conduct, the Court has not received credible evidence on which to rely. Gertrude Glaspie, Marcie Holliman, Machelle Kiolbassa, Yvonne Vazquez and Starlene Petrus were not witnesses at the sentencing hearing who could be cross examined. Their accounts as to alleged abuse were merely summarized by Agent Payne based off the reports made by others and are all varying levels of hearsay. Such evidence is not competent for the Court's consideration on this issue.

The Government makes an additional argument that Defendant used his status as a home health doctor to take advantage of certain female patients and, therefore, should have his sentence enhanced. In essence, the Government is encouraging the Court to enhance the sentence twice for his status as a physician, and Defendant urges the Court to reject this argument due to the adjustment already made pursuant to U.S.S.G. § 3B1.3.

A sentence within the sentencing guideline range would not deprecate the serious nature of the offense or fail to deter others from the same criminal conduct. While Defendant respectfully disagrees with the Court's determination as to loss, for the foregoing reasons, Defendant urges the Court to fashion a sentence within the guideline range as opposed to above the applicable guidelines.

By:    /s/
DEBRA D. SCHAFER,
321 West State Street, Suite 700
Rockford, IL 61101
(815) 962-5490
dschafer@sreenan-cain.com

## CERTIFICATE OF FILING AND SERVICE

The undersigned attorney hereby certifies that the following document:

**DEFENDANT'S RESPONSE TO UNITED STATES' MOTION FOR
AN ABOVE-GUIDELINES RANGE SENTENCE**

was served on April 19, 2017, in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF), pursuant to the District Court's system as to ECF filers.

*/s/ Debra D. Schafer*
DEBRA D. SCHAFER,
321 West State Street, Suite 700
Rockford, IL 61101
815.962.5490
dschafer@sreenan-cain.com